UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FEDERICO COLÓN | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
| v. | CHARGE NO. 440-2013-01970 |
| FOREST COUNTY POTAWATOMI COMMUNITY D/B/A POTAWATOMI BINGO CASINO | SUBPOENA NO. CH-13-090 |
| | E.D. WIS. CIVIL ACTION NO.: _____ |

**MEMORANDUM IN SUPPORT OF FOREST COUNTY POTAWATOMI COMMUNITY'S MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

Forest County Potawatomi Community d/b/a Potawatomi Bingo Casino (the "Tribe"), through its undersigned counsel, and pursuant to Rule 45, Fed. R. Civ. P., submits this Brief in Support of its Motion to Quash Subpoena No. CH-13-090, issued by Area Director John P. Rowe on behalf of the Equal Employment Opportunity Commission (the "Commission") and served by mail on Tribe Chairman Harold Frank and the undersigned counsel on or about August 6, 2013. (Declaration of Rufino Gaytán III (hereinafter "Gaytán Decl.") ¶ 2.) The subpoena is attached to the Gaytán Decl. as **Exhibit A**.) The Tribe hereby requests that the Court quash the subpoena on the grounds that (a) the Tribe is immune from suit arising from the related Charge, (b) the subpoena is unenforceable as against the Tribe, (c) the Commission has refused to engage in good faith discussions to conciliate, and (d) the subpoena requests information far beyond the scope of the Charge.

Notwithstanding the Tribe's immunity, it has sought, on multiple occasions, to discuss the jurisdictional issue with the Commission, and has repeatedly requested that the Commission explain its basis for proceeding. For reasons unknown, the Commission has refused to provide

any explanation, or even respond to the Tribe's concerns and objections. Accordingly, in addition to moving to quash the subpoena, the Tribe requests a protective order prohibiting the Commission from issuing additional subpoenas in connection with this matter due to its lack of jurisdiction.[1]

**BACKGROUND**

Federico Colón filed a Charge of Discrimination on or about February 19, 2013. (Gaytán Decl. ¶ 3. The Charge is attached to the Gaytán Decl. as **Exhibit B**.) Mr. Colón based his charge on the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq* (the "ADEA"), alleging, among other things, that he was subjected to different terms and conditions of employment than younger coworkers, and was not properly notified about policies and procedures. (Gaytán Decl. ¶ 3, Exhibit B.)

In its initial response to Mr. Colón's Charge, the Tribe advised the Commission that because the Tribe is a sovereign, federally-recognized Indian Tribe, it is immune from suit, and that the ADEA does not apply to the Tribe because it is exempt from the ADEA. (Gaytán Decl. ¶ 4. The Tribe's position statement is attached to the Gaytán Decl. as **Exhibit C**.) Indeed, the Commission itself had recently acknowledged that the ADEA did not apply to the Tribe and dismissed a prior charge for that reason. (Gaytán Decl. ¶ 5. The Dismissal and Notice of Rights is attached to the Gaytán Decl. as **Exhibit D**.) Notwithstanding its lack of jurisdiction or the other issues raised by the Tribe, the Commission continued its investigation of the Charge and issued a Request for Information to the Tribe on July 8, 2013, seeking the same categories of information now requested in the subpoena. (Gaytán Decl. ¶ 6. The Request for Information is

---

[1] The Tribe has also moved to quash a separate subpoena issued by the Commission in connection with a separate investigation. While the jurisdictional issues and lack of conciliation efforts are common to each motion, the facts of the underlying charges are distinct and therefore the Tribe filed separate motions.

attached to the Gaytán Decl. as **Exhibit E**.)  Through counsel, the Tribe restated the jurisdictional issues during a July 11, 2013 telephone conference with Commission Investigator Andrew Daley and again requested an explanation of the Commission's basis for asserting jurisdiction against the Tribe.  (Gaytán Decl. ¶ 7.)

In a July 19, 2013 voicemail message, Mr. Daley stated that the Commission refused to provide any basis for asserting jurisdiction over the Tribe, and that the Commission did not otherwise respond to the Tribe's concerns and objections.  (Gaytán Decl. ¶ 8.)  The Tribe again summarized its position with respect to the Commission's lack of jurisdiction in a letter to Mr. Daley dated July 22, 2013.  (Gaytán Decl. ¶ 9.  The July 22, 2013 letter is attached to the Gaytán Decl. as **Exhibit F**.)  Without conceding that the Commission has jurisdiction over the Tribe under the ADEA, the Tribe also informed the Commission in the July 22, 2013 letter that it wished to engage in mediation in an effort to resolve the Charge.  (Gaytán Decl. ¶ 9, Exhibit F.)  Unfortunately, instead of responding to the mediation request, or otherwise engaging in discussions relating to the Charge, the Commission transmitted the subpoena.  (Gaytán Decl. ¶ 10.)

In an August 13, 2013 letter to Director Rowe, the Tribe again attempted to discuss the jurisdictional issues and the Commission's apparent denial of the Tribe's request to mediate Mr. Colón's Charge.  (Gaytán Decl. ¶ 11.  The August 13, 2013 letter is attached to the Gaytán Decl. as **Exhibit G**.)  As of the date of this filing, the Commission has yet to respond in any manner to the Tribe's requests, including the Tribe's request to withdraw the subpoena.  (Gaytán Decl. ¶ 11.)

# ARGUMENT

## I. THE TRIBE IS IMMUNE FROM SUIT AS A SOVEREIGN ENTITY.

Like the United States and the 50 states, federally-recognized tribes, including the Tribe, enjoy immunity from suit: "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("It is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'")); *see also Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 928 (7th Cir. 2008) ("Tribal sovereign immunity is a necessary corollary to Indian sovereignty and self-governance."). Tribal sovereign immunity extends not only to a tribe's governmental functions but also to its commercial activities, both on and off reservation. *See Kiowa Tribe*, 523 U.S. at 757-58. Congress has not abrogated the Tribe's immunity as it relates to the ADEA, *see* 29 U.S.C. § 621, *et seq.*, and the Tribe has not waived such immunity.

The Tribe acknowledges that some courts have held that tribal sovereign immunity is ineffective against the United States. *See, e.g.*, *Fl. Paraplegic Ass'n v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1135 (11th Cir. 1999); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174 (2nd Cir. 1996); *United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380, 383 (8th Cir. 1987). As discussed in greater detail at Section II.A., below, the Tribe's immunity is nevertheless relevant in determining whether the Tribe should be regarded as a "person" within the meaning of a federal statute. *U.S. v. Menominee Tribal Enterps.*, 601 F. Supp. 2d 1061 (E.D. Wis. 2009) ("Although the immunity question does not conclusively answer the question of what

the statute means (*i.e.*, whether a tribe is a 'person' under 31 U.S.C. § 3729(a)), the existence of immunity is what drives a key statutory interpretation presumption.").

## II. BECAUSE THE ADEA DOES NOT APPLY TO THE TRIBE, THE SUBPOENA IS UNENFORCEABLE.

### A. *The Commission is Bound by Its Own Determination that the ADEA Does Not Apply to the Tribe.*

Independently of the Tribe's immunity from suit, the ADEA does not apply to the Tribe, and accordingly, the Commission does not have jurisdiction to consider Mr. Colón's Charge or initiate its own investigation against the Tribe. As a result, the subpoena itself is unenforceable against the Tribe.

The Commission agrees. On November 8, 2012, the Commission definitively interpreted the ADEA to not apply to Indian tribes. (Gaytán Decl. ¶ 5, Exhibit D.)[2] In a charge filed against the Tribe by an employee alleging a violation of the ADEA (Charge No. 443-2012-0089), the Commission issued the charging party a Dismissal and Notice of Rights, approved by Director Rowe, stating that the Commission was closing its investigation because the "[Tribe] is exempt from Title VII and ADEA coverage." (Gaytán Decl. ¶ 5, Exhibit D.) Despite demand, the Commission has not explained the basis or rationale for its apparent change in position. The Commission, therefore, should have dismissed the present Charge for lack of jurisdiction based on its own definitive interpretation of the ADEA.

---

[2] Since the Tribe has relied upon the Commission's definitive interpretation of the inapplicability of the ADEA to the Tribe, the Commission cannot simply reverse its own interpretation of the ADEA to create potential liability for the Tribe, and certainly not in a retroactive manner. This situation is no different than the Department of Labor's varying interpretations of the Fair Labor Standards Act's overtime provisions with regard to mortgage loan officers, which the Court of Appeals for the District of Columbia recently addressed. *Mortgage Bankers Ass'n v. Harris*, ___ F.3d ___ , No. 12-5246, 2013 WL 3305719 (D.C. Cir. July 2, 2013) (holding that an administrative agency can only change a definitive interpretation of its own regulations through the formal rulemaking process); *see also Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165 (7th Cir. 1996).

B.  *The Tribe is Not an Employer For Purposes of the ADEA.*

Based on the ADEA's definition of "employer," the Tribe is excluded from the ADEA's coverage.  Section 10 of the ADEA, 29 U.S.C. § 630(b), provides:

> For the purposes of this chapter-
>
> (a) The term "person" means one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons.
>
> (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided*, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

Section 630(b) recognizes two, and *only* two, categories of employers: (1) "persons" and their agents and (2) State-related entities.  The Tribe, an aboriginal sovereign exercising inherent rights of self-government, falls into neither category.  Pre-dating the formation of Wisconsin by many centuries, the Tribe is in no sense a state subdivision or instrumentality.  *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 154 (1980) ("Tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States.")  Nor can the Tribe be a "person."  By starting the second sentence of § 630(b) with the phrase "the term *also* means," Congress indicated its unmistakable understanding that the governmental entities that follow are not "persons."  Section 630(b)(2) would otherwise be superfluous.

The distinction that Congress draws in § 630(b)(2) between governmental entities and "persons" is obvious and sound.  Section 630(a) defines persons to include "individuals,

partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons." None of these labels describes governments, including tribal governments. The Supreme Court has characterized tribes as "distinct, independent political communities" and acknowledged their "inherent sovereign authority to set conditions on entry, preserve tribal self-government [and] or control internal relations." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 327, 338 (2008). The list of federally recognized tribes published periodically refers to tribes as entities "acknowledged to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States." 77 Fed. Reg. 47868 (Aug. 10, 2012); *see also*, Native American Housing and Self-Determination Act of 1996, P.L.-104 330, 110 Stat. 4030, 25 U.S.C. § 4101 (Congress' Finding that "there exists a unique relationship between the government of the United States and the governments of Indian tribes and a unique federal responsibility to Indian people.").

In holding that tribes were not "persons" who could bring suit under the Civil Rights Act of 1870, the Supreme Court explicitly equated tribes with the state governments: "The parties and, as amicus curiae, the United States agree that a Native American Tribe, like a State of the United States, is not a 'person' subject to suit under 42 U.S.C. § 1983. We hold that, in the situation here presented, the Tribe does not qualify as a 'person' who may sue under § 1983." *Inyo County v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony,* 538 U.S. 701, 704 (2003). The *Inyo County* decision reinforces both the Tribe's non-person status and its governmental status and is highly relevant in the case at bar.

In *United States v. Menominee Tribal Enterprises*, 601 F. Supp. 2d 1061 (E.D. Wis. 2009), this district reached a similar conclusion in holding that the Menominee tribe was not a

7

"person" for purposes of the False Claims Act. The court's holding and reasoning apply with equal force here:

> [J]ust as Congress "must do something more" to indicate that a sovereign state may be sued, it must do so if it intends a sovereign tribe to be sued. Because *Stevens* turned largely on the statutory presumption afforded sovereign entities, and because there is no affirmative evidence that Congress intended to allow Indian tribes to be sued under the FCA, I conclude tribes are not "persons" under § 3729(a).
>
> Nor am I persuaded by the Government's argument that the outcome should be different here in light of the fact that the United States, rather than a private party, is the plaintiff.

601 F. Supp. 2d at 1068-69.

That Congress chose not to include tribes within the governmental entities brought within the scope of the ADEA pursuant to § 630(b) is dispositive. When Congress wishes to include tribes with other governmental entities, it knows how to do so. Numerous non-Indian-specific acts of Congress expressly refer to tribal governments. *See, e.g.*, 15 U.S.C. §375(10); 7 U.S.C. § 2009bb-4(c); 16 USC § 3839bb–5(b).

The ADEA's definition of "employer" unambiguously excludes tribes. But if there were an ambiguity, it should be resolved in favor of the Tribe. The rule that ambiguous treaties and statutes are to be construed in favor of tribes is a cornerstone of federal Indian law. *County of Yakima v. Yakima Nation*, 502 U.S. 251, 268-69 (1992) ("Statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit" (quoting *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985))). Section 630(a) cannot be applied to the Tribe without violating this rule.

C. *Even Under the Coeur d'Alene Analysis, the ADEA Does Not Apply to the Tribe.*

In cases in which a federal law is unclear with respect to its applicability to tribes, most federal circuits, including the Seventh Circuit, have adopted a variation of the "*Coeur d'Alene*

Rule" articulated by the Ninth Circuit in *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985). Under the *Coeur d'Alene* Rule, federal laws of general applicability will be applied to tribes unless they "touch [] exclusive rights of self-governance in purely intramural matters." *Id.* at 1116; *accord United States v. Funmaker*, 10 F.3d 1327, 1330-31 (7th Cir. 1993); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932-933 (7th Cir. 1989); *United States v. Fox*, 573 F.3d 1050, 1052 (10th Cir.2009) (quoting *Nero v. Cherokee Nation.*, 892 F.2d 1457, 1462–63 (10th Cir. 1989)); *United States v. White*, 237 F.3d 170, 173 (2d Cir. 2001); *accord Menominee Tribal Enterps. v. Solis*, 601 F.3d 669, 671 (7th Cir. 2010) (a law of general applicability will not apply to an Indian tribe if, among other exceptions, the application of the law "would interfere with tribal governance . . . .").

For the reasons explained in Section B, above, the *Coeur d'Alene* Rule does not apply in this case. The ADEA's definition of "employer" unambiguously excludes tribes. It is significant, however, that the three federal appellate courts that have addressed the applicability of the ADEA to Indian tribes under a variant of the *Coeur d'Alene* Rule have all ruled that the ADEA does *not* apply to Indian tribes. *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1080 (9th Cir. 2001) (ADEA inapplicable where enforcement would interfere with tribe's right of self-government); *E.E.O.C. v. Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 249-51 (8th Cir. 1993) (same); *E.E.O.C. v. Cherokee Nation*, 871 F.2d 937, 939 (10th Cir. 1989) (holding that the normal rules of statutory construction do not apply to the ADEA when "matters involving Indians[] are at issue."). While the Seventh Circuit has not directly addressed the ADEA's applicability to a tribe, the court, in dicta, expressly approved the Tenth Circuit's holding in *Cherokee Nation*. *See Reich v. Great Lakes Indian Fish & Wildlife Comm'n*, 4 F.3d 490, 495-96 (7th Cir. 1993).

Even if the *Coeur d'Alene* Rule applies to this case, the Tribe is not a commercial enterprise but a sovereign government. Its governmental operations include administration, a judicial system, housing, health care and a broad array of social services. Yet, because its lands are held in trust by the United States and non-taxable, property tax revenue, the source of government funding commonly utilized by municipal governments, is unavailable to the Tribe. The Tribe relies instead on gaming revenue. As the primary source of financing for the Tribe's government, the Tribe's gaming operations constitute an integral part of the Tribe's system of government.

When it enacted the Indian Gaming Regulatory Act ("IGRA"), Congress made the express findings that "numerous Indian tribes have become engaged in or have licensed gaming activities on Indian lands as a means of generating tribal governmental revenue" and "a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government." 25 U.S.C. § 2701(1), (4). Congress's primary declared purpose in enacting IGRA was "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702.

Based on (1) the Commission's own determination that the ADEA does not apply to the Tribe, (2) the plain meaning of the ADEA's definition of "employer," (3) the requirement that any ambiguity about the ADEA's applicability be resolved in favor of the Tribe's rights, and (4) the fact that applying the ADEA to the Tribe in this case would interfere with its rights of self-governance, the ADEA does not apply to the Tribe. Having previously been provided the preceding authorities, the Commission has refused to respond or engage in informal discussions

to resolve the Charge, let alone state a basis for proceeding. Consequently, the subpoena is unenforceable as against the Tribe.

### III. THE COMMISSION HAS REFUSED TO ENGAGE IN GOOD FAITH EFFORTS TO CONCILIATE.

Notwithstanding the Tribe's immunity from suit, and the Commission's lack of authority to require the production of documents, the Tribe has made repeated efforts to engage in good faith discussions regarding the investigation and even offered to take the Charge through the Commission's own mediation program. The Commission has completely refused to engage in any discussions or other efforts to conciliate and failed to even respond to the request for mediation. Further, the Commission has failed to explain its purported authority as it relates to the Tribe, failed to explain its abandonment of its earlier determination as to the inapplicability of the ADEA, failed to explain the relevance of the evidence sought, and failed to explain its consideration of the Tribe's prior objections, all in violation of the ADEA's command that the "Commission *shall* attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b) (emphasis added). The Commission is required to engage in good faith discussions, which includes providing the courtesy of a response to the mediation request and to provide its stated basis for proceeding in light of its own acknowledgment that the ADEA does not apply to the Tribe. It is counterproductive, a misuse of resources, and contrary to the Commission's statutory mandate to ignore resolution efforts and instead respond with unexplained and unauthorized subpoenas.

### IV. THE SUBPOENA REQUESTS INFORMATION NOT RELEVANT TO THE CHARGE.

The EEOC is entitled "only to evidence relevant to the charge under investigation." *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002) (reining in the

11

Case 2:13-mc-00053-CNC   Filed 08/23/13   Page 11 of 13   Document 2

Commission's subpoena authority under Title VII). The relevance requirement is "designed to cabin the EEOC's authority and prevent 'fishing expeditions.'" *Id.* at 653. Further, the EEOC bears the burden of establishing that its discovery demands are relevant to the investigation. *E.g., E.E.O.C. v. Kronos, Inc.,* 620 F.3d 287, 297 (3rd Cir. 2010).

The subpoena requests information far beyond that which is relevant to the Charge. The subpoena requests, among other overly broad requests, "all documents" related to "all" age-based complaints for a more than one-year time period, including all related personnel files, internal investigation documents, and the compilation of related summaries. (*See* Gaytán Decl. ¶ 2, **Exhibit A**.) These requests simply bear no relation to the Charge under investigation and the time period sought far exceeds the applicable limitations period. The Charge relates to a single employee complaining of a limited series of alleged events occurring in December 2012. The Charge does not in any way allege a pattern or practice of discrimination.

## **CONCLUSION**

Despite repeated demands, the Commission has failed to demonstrate its authority to conduct its investigation of the Tribe, has refused to engage in any efforts to conciliate, refused to mediate Mr. Colón's Charge, and has not carried its burden of demonstrating the relevance of the items requested by the subpoena. Accordingly, for all of these reasons, the subpoena is not enforceable against the Tribe.

WHEREFORE, the Tribe respectfully requests that the Equal Employment Opportunity Commission's Subpoena No. CH-13-090 be quashed and that the Court issue a protective order prohibiting the Commission from seeking additional discovery in relation to the Colón charge. Finally, in light of the Commission's refusal to discuss or otherwise resolve this matter without Court intervention, the Tribe respectfully requests that the Court award its fees and costs associated with filing this motion.

Dated this 23rd day of August, 2013.

Respectfully submitted,

*s/ Andrew S. Oettinger*
Andrew S. Oettinger, State Bar No. 1053057
Rufino Gaytán, III, State Bar No. 1065235
Brian L. Pierson, State Bar No. 1012257
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
Phone: 414-273-3500
Fax: 414-273-5198
Email: AOettinger@gklaw.com
RGaytan@gklaw.com
BPierson@gklaw.com

Attorneys for Forest County Potawatomi
Community d/b/a Potawatomi Bingo Casino

Direct Inquiries To:
Andrew S. Oettinger
414-287-9618

9931811.4